**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MMI, Inc., | No. CV-15-00449-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Rich Godfrey & Associates, Inc., et al., | |
| Defendants. | |

Before the Court is Defendants' partial Motion for Summary Judgment (Docs. 79; 80). The motion is fully briefed (Docs. 84-89), and no party has requested oral argument. For the reasons that follow, the motion will be granted.

**I.     Background**

In the summer of 2006, Christopher Martin, owner of Martin Manufacturing, Inc., built a prototype of a small, gas-powered, two-wheeled minibike. Later that fall, Martin approached the president of Baja, Inc., then Richard Godfrey, to reproduce and sell the minibike. Martin claims that the parties entered into an oral agreement to license the minibike. Qunsheng Group Co. Ltd., a Chinese manufacturer, was selected to fabricate the minibike. Using the proposed prototype, the minibike was manufactured and marketed under variations of "Doodlebug" or "DB-30."

Between August and September of 2006, retail distributor Pep Boys Manny Mo & Jack of California placed orders for the minibikes with Baja. In turn, Baja placed purchase orders for the minibikes with Qunsheng, one for 50 units and one for 196. The

minibikes were manufactured, invoiced, and shipped to the United States, and were delivered to freight carriers in October 2006. On or before November 10, 2006, the minibikes were delivered to Pep Boys distribution centers. They were then distributed to Pep Boys retailers where they were offered for sale and sold to customers in the United States. The minibike bearing VIN L4GSDGL056S00021 was among those manufactured and delivered to the United States in 2006. (Doc. 80 ¶¶ 6-8, 19-25, 27-32; Doc. 80-1 at 87; Doc. 84 ¶¶ 19, 43-46.)

Between December 2006 and January 2007, feedback regarding the distributed minibikes was received, and improvements were discussed with Martin. Martin then made a prototype incorporating the modifications. (Doc. 84 ¶¶ 51-53.)

On March 30 2007, Martin entered into a licensing agreement with Baja to manufacture and distribute the "Doodlebug 30 minibike (the 'MiniBike')." (Doc. 85 at 13; Doc. 87 at 75.) The licensing agreement incorporated by reference blue prints, CAD drawings, specifications, and design parameters of the minibike, as well as a sample prototype of the minibike. A "depiction of the Minibike," shown below, was also attached to the agreement.



(Doc. 87 at 83, Exh. J.) A second production of the minibikes ran in the spring of 2007. (Doc. 84 ¶¶ 53, 65.)

In November of 2007, a dispute arose between Martin and Baja regarding the ownership of the "Baja Doodle Bug" design. Martin sent a letter to purchasers informing them that Martin Manufacturing had terminated all licensing of all products with Baja, and had selected a new distributor and/or manufacturer. Baja ceased paying Martin royalties for sales of the minibike.

On November 15, 2007, Martin filed a patent application for his minibike design with the United States Patent Office. Following resubmission of an amended application, on April 28, 2009, the patent office issued United States Design Patent No. D591,203S ("'203 Patent"), entitled "Asymmetrical Mini Bike," the rights of which Martin assigned to MMI.

MMI subsequently filed a complaint in federal court on March 3, 2010, *MMI, Inc. v. Baja, Inc., et al*, CV-10-00496-PHX-RCJ (D. Ariz.), bringing one claim of patent infringement against Baja and alleged distributors. (Doc. 80 at 69-75.) The case concluded by settlement and was dismissed without prejudice on August 5, 2011.

Sometime between 2011 and 2012, MMI claims that Martin again entered into discussions with Godfrey, now owner of Rich Godfrey & Associates, Inc. (dba Coleman Powersports), to license and sell Martin's minibike. MMI claims that during those discussions, Godfrey made false representations which induced Martin to provide him with his minibike prototype. (Doc. 52.) Godfrey took possession of the prototype and refused to return it. Godfrey then shipped the prototype to China "to be copied into an almost identical mini bike model that directly incorporated the design elements of the '203 Patent ([] referred to as the 'Infringing Products')." (Doc. 52 ¶ 24.) He marketed, imported, distributed and sold the "Infringing Products," which he made available to retail distributors for consumer purchase.

On March 12, 2015, MMI filed a second lawsuit in federal court commencing the instant action. A First Amended Complaint was filed on November 25, 2015. (Doc. 52.)

MMI sues Richard Godfrey (and spouse Susan Godfrey), Rich Godfrey & Associates, Inc., Cabela's, Inc., BJ's Wholesale Club, Inc., and Recon Enterprise, LLC, bringing claims against them for direct, induced, and contributory patent infringement, as well as breach of contract, fraud, fraudulent inducement and negligent misrepresentation. MMI seeks injunctive relief and damages.

Defendants each filed an answer and counterclaim against MMI bringing two counts for declaratory judgment, seeking a declaration of invalidity and a declaration of non-infringement. Defendants presently move for partial summary judgment on their counterclaim of invalidity. (Doc. 79.)[1]

## II. Legal Standards

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. If the movant carries its initial burden of production, in response, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

The court views the evidence and draws reasonable inferences "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654,

---

[1] MMI having withdrawn its claim for contributory patent infringement (Doc. 88 at 3), the Court does not address the alternative request for partial summary judgment on that claim.

4

655 (1962). However, only disputes over facts that could affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Scott v. Harris*, 550 U.S. 372, 380 (2007).

Patents are presumed to be valid. 35 U.S.C. § 282; *Microsoft Corp. v. i4i Limited Partnerhsip,* 131 S.Ct. 2238 (2011). To obtain summary judgment on invalidity, the moving party must therefore overcome the presumption of validity by presenting clear and convincing evidence of invalidity under 35 U.S.C. §§ 101, 102, 103, 112, or 251.[2] *Honeywell Int'l. Inc. v. Universal Avionics Systems Corp.,* 488 F.3d 982, 996 (Fed. Cir. 2007); *Apple Computer Inc. v. Articulate Sys. Inc.*, 234 F.3d 14, 26 (Fed. Cir. 2000).

### III. Discussion

The Court finds that Defendants have met their burden, and have overcome the presumption of validity of the '203 Patent.

Under 35 U.S.C. § 102(b),[3] commonly referred to as the "on-sale bar," a patent is not valid if "the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States." Application of the on-sale bar requires that the subject of the barring activity: (1) anticipated the claimed invention or would have rendered the claimed invention obvious; (2) was commercially sold or offered for sale prior to the critical one-year date; and (3) was ready for patenting at the time of the offer or sale. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 68 (1998)*; Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 855 F.3d 1356, 1363 (Fed. Cir. 2017); *Atlanta Attachment Co. v. Leggett & Platt, Inc.,* 516 F.3d 1361, 1365 (Fed. Cir.

---

[2] Generally, new evidence supporting an invalidity defense carries more weight in an infringement action than evidence previously considered by the Examiner. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2251, (2011).

[3] The language and structure of Title 35 was amended by the Leahy–Smith America Invents Act ("AIA"). Pub.L. No. 112–29, 125 Stat. 284 (Sept. 16, 2011). Because the '203 Patent was issued before September 16, 2011, the Court refers to the pre-AIA versions of the statutes. *See Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 855 F.3d 1356, 1363 (Fed. Cir. 2017).

2008); *Honeywell*, *supra*; *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002). Whether a patent is invalid based on the on-sale bar is a question of law based on underlying factual findings. *See Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002).

### A. Anticipation

First, Defendants have presented clear and convincing evidence that the subject of the barring activity anticipated MMI's patented minibike design.

The subject of a sale anticipates a claimed invention when it embodies the patented design. *See Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1306 (Fed. Cir. 2010); *Allen Engineering*, 299 F.3d at 1352 (a devise fully anticipates a claimed invention for purposes of the on-sale bar when it embodies all of the limitations of the claim); *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1077 (Fed. Cir. 1998). To make this determination, the court first construes the claimed design, if appropriate,[4] and then compares the claimed design to the alleged anticipatory product. *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312-13 (Fed. Cir. 2001). In making a comparison, the court applies the "ordinary observer" test, that is, the court determines whether the "two designs are substantially the same" such that an ordinary observer would be deceived into thinking that the alleged anticipatory product is the same as the patented design. *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) (concluding that the "ordinary observer" test that applies to design patent infringement applies to invalidity). The consideration looks to the similarities of the "overall designs," not the similarities of the individual features of the designs. *Int'l Seaway,* 589 F.3d at 1239-41; *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008); *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365,

---

[4] "[A] court may not invalidate the claims of a patent without construing the disputed limitations of the claims and applying them to the allegedly invalidating acts. However, a district court need not construe undisputed claim terms prior to issuing a summary judgment of invalidity. *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) (internal citations and quotation marks omitted).

1371 (Fed. Cir. 2006). The overall consideration takes into account "significant differences between the two designs," as compared to "minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway,* 589 F.3d at 1243; *see also Crocs*, 598 F.3d at 1303 (significance depends on "the overall effect" of the differences on the design).

Here, Defendants argue that the claimed design in the '203 Patent is embodied in the minibike that was offered for sale in 2006 (referred to in short by the parties as the "2006 DB-30"). To support this argument, Defendants offer a side-by-side comparison of the figures in the '203 Patent and photographs of the minibike bearing VIN L4GSDGL056S00021. (Doc. 80 at 51-67.) It is undisputed that the 2006 DB-30 minibike was fabricated using Martin's design, and that neither the design nor the manufactured product had been identified or included as prior art in Martin's '203 Patent application.

Before turning to the evidence presented by Defendants, however, the Court observes that MMI's prior infringement allegations and arguments alone could support a finding that its claimed design was anticipated by the design embodied in the 2006 DB-30 minibike. *See Bristol-Myers Squibb Co. v. Ben Venue Labs.*, Inc., 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[T]hat which would literally infringe if later anticipates if earlier."); *see also Vanmoor v. Wal–Mart Stores, Inc.,* 201 F.3d 1363, 1366 (Fed. Cir. 2000) ("Although Wal-Mart and the manufacturers bore the burden of proving that the cartridges that were the subject of the pre-critical date sales anticipated the '331 patent, that burden was satisfied by Vanmoor's allegation that the accused cartridges infringe the '331 patent."); *Evans Cooling Systems, Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) ("Although GM bore the burden of proving that the LT1 engine embodied the patented invention or rendered it obvious for purposes of the summary judgment motion, this burden is met by Evans' allegation, forming the sole basis for the complaint, that the LT1 engine infringes."); *Leader Technologies, Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 716 (D. Del. 2011) ("An admission by the patentee that a particular product practices the claimed invention is sufficient to satisfy the defendant's burden that

the product anticipates the claim for purpose of applying the on sale bar and public use bar"); *Cummings v. Adidas,* 716 F. Supp. 2d 323, 332 (S.D.N.Y. 2010) (finding burden satisfied by the patentee's allegations and admissions regarding infringement).

In the prior patent action, MMI claimed that the minibikes sold prior to November 15, 2006 infringed the '203 Patent.[5] In its motion for sanctions against Baja in that case, MMI summarized as follows:

> This matter arises out of the infringement of a patent for a motorized minibike known as the Baja Doodlebug DB30 (the "Minibike" or "Minibikes") owned by MMI. Baja initially licensed the rights to the Minibike to Baja and Baja agreed to pay a 5% royalty for all Minibikes sold by it minus any returns. Baja ceased making royalty payments, but continued to sell more than 100,000 of the Minibikes without compensation to MMI.
>
> After Baja ceased making royalty payments, MMI secured a patent on the Minibike. The current action is to enforce MMI's patent rights on the Minibike. A related state law case is currently pending in Maricopa County Superior Court to adjudicate Baja's breach of a contract between MMI and Baja for the payment of royalties.

*MMI, Inc. v. Baja*, *supra*, Dkt. No. 83 at 2 (D. Ariz. Aug. 19, 2010).[6] It requested that Baja be sanctioned for failure to satisfy its discovery obligations, citing that its:

---

[5] *See* Doc. 84 ¶ 68 ("The Controverting Statement of Facts filed by Plaintiff in that matter (Dkt. 132, MMI v. Baja) very plainly set forth all of the above facts, and included a Declaration by Mr. Martin that is included for the Court's review"); Doc. 87, Exh. J, *MMI v. Baja* CSOF ¶ 14 ("Baja does not contest that it sold a product that infringes the '203 Patent. *See* Baja's Responses to Requests for Admissions 8-10, a copy of which is attached hereto as Exhibit 3."); Doc. 87, Exh. J, *MMI v. Baja* CSOF ¶ 31 ("During the course of discovery, MMI sought admissions from Baja that it sold, offered for sale, and advertised within the United States, minibikes that were substantially similar to the patented minibike. Baja responding to these three requests for admissions by admitting that: '[I]f MMI claims that mini bikes sold [offered for sale or advertised] by Baja prior to November 15, 2006 infringe U.S. Patent No. D591,203, then Baja admits those mini bikes are substantially similar to the mini bikes depicted in U.S. Patent No. D591,203. Baja denies the remainder of the request.' *See* Defendant Baja, Inc.'s Responses to Plaintiff's Request for Admissions 8-10, copies of which are attached hereto as Exhibit 3.").

[6] Matters contained in court filings and other public records are considered appropriate subjects of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).

> MMI's second Request for Production requested "Any and all Communications pertaining to the Baja Doodlebug DB30, MMI, Inc., Martin Manufacturing, Inc. and/or Christopher Martin from June 2006 to the present". Other than a handful of e-mails related to Minibike returns, Baja produced no e-mails or written correspondence related to the Minibike.
>
> MMI is aware of, and has produced to Baja, e-mails between Baja representatives and MMI representatives relating to the design and manufacture of the subject Minibike. See Various emails, attached hereto as Exhibit "F" [dated December 28, 2006 - January 22, 2007].

*MMI, Inc. v. Baja*, *supra*, Dkt. Nos. 83 at 5; 83-1, Exh. F (D. Ariz. Aug. 19, 2010).

These matters aside, the Court finds Defendants have presented clear and convincing evidence that the 2006 minibike anticipated the claimed design in the '203 Patent. The '203 Patent (Doc. 80 at 186-202) sets forth one claim: "[t]he ornamental design for an asymmetrical mini bike, as shown and described." The patent includes sixteen drawing sheets (Figures 1-16) in which the boundaries between the claimed and unclaimed portions of the minibike design are illustrated by the use of dots and broken lines. The patent description reads: "[t]he asymmetrical mini bike has aesthetic steel hoops for the retention of the rear fender and a rear lift handle attachment." Figures depicting the ornamental design claimed in the '203 Patent, and comparative images of the 2006 DB-30 minibike are set forth below.[7] The Court allows the figures to speak for themselves. *See Egyptian Goddess*, 543 F.3d at 679 ("Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design.").

---

[7] The functional, non-ornamental components of the minibike are not disputed and have been excluded from the claimed design through the use of broken lines and dots. *See Door-Master*, 256 F.3d at 1312–13 ("In construing the claimed design, [] only the non-functional aspects of an ornamental design as shown in a patent are proper bases for design patent protection."). Because the design claimed is "as shown and described" in the illustrations, and does not specify size or measure the balance of the frame (or any other ornamental feature), the Court does not construe the claim as having a "symmetrical" or "asymmetrical" frame. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008) (rejecting claim construction that would exclude embodiments illustrated in the drawings); *MBO Labs., Inc. v. Becton, Dickinson & Co.,* 474 F.3d 1323, 1333 (Fed. Cir. 2007).

9

Figure 7, which appears on the face of the '203 Patent, "is a right side perspective view" of the minibike.

 

'203 Patent Figure 7                     VIN L4GSDGL056S00021 (2006)

Figure 1 "is as a front view of the asymmetrical mini bike, showing [the inventor's] new design."

 

'203 Patent Figure 1                     VIN L4GSDGL056S00021 (2006)

Undertaking a side-by-side comparison, considering all of the ornamental features illustrated in the figures,[8] the Court finds there is no genuine issue of material fact as to whether an ordinary observer would believe the claimed design is substantially the same as the design embodied in the 2006 DB-30 minibike. In one comparison after another, the 2006 DB-30 minibike appears to be nearly identical to the claimed design in the '203 Patent. The 2006 DB-30 minibike embodies the same overall appearance of the minibike in the claimed design.

MMI argues that the two designs are "plainly different;" the claimed design differs from the 2006 DB-30 minibike because it has an asymmetrical frame, whereas the 2006 DB-30 minibike has a symmetrical frame. (Docs. 84; 88.) MMI attaches a declaration by Martin in which he sets forth that the patent figures "clearly show that the patented mini bike has an asymmetrical frame – i.e., the frame of the mini bike is not the same on either side of the plane running down the middle of the mini bike from front to back. The asymmetry is created by bending the rear frame tubing on the right side of the minibike (when viewed from the front) outward at a greater angle than the tubing on the left side. The increased degree of being on the right side offsets the engine which is offset to the left, thus creating a more balance appearance for the mini bike. The asymmetry is readily apparent in the rear views of the Asymmetrical Mini Bike at Figures 3 & 11 of the '203 patent." (Doc. 85, Exh. B ¶ 11.)

///

///

///

///

///

///

---

[8] The Court has considered the claimed design "as shown and described" in the '203 Patent and in each of the illustrations shown in Figures 1-16. (Doc. 80 at 186-202.) The figures and images in this Order are merely illustrative examples. The Court has considered the photographs of the 2006 DB-30 minibike taken by both parties in making its comparison. (*See* Doc. 86, Exh. H; Doc. 80 at 51-67.)




'203 Patent Figure 11    '203 Patent Figure 3    VIN L4GSDGL056S00021 (2006)





'203 Patent Figure 14    '203 Patent Figure 6    VIN L4GSDGL056S00021 (2006)

12

The Court finds that any distinction of asymmetry or symmetry in the two designs here is insufficient from the point of view of the ordinary observer to preclude a finding of anticipation. The hypothetical ordinary observer would not be drawn to this aspect of the claimed design as it is "intentionally,... rather subtle." (Doc. 88; Doc. 84 ¶ 69 ("because of the nature of depicting the design on standard paper, the images in the design patent are reduced from actual size by seven to eight times. This necessary reduction from actual size takes critical elements of the design that are, intentionally, rather subtle in real life, and makes them even more so in the drawings.").) In a side-by-side comparison, the visual theme of bending and gapping of the frame is present in both. The alleged variation of the frame in the claimed design does not change the overall visual impression of the minibike; the overall balance in appearance is deceptively similar, if not identical, to the 2006 DB-30 minibike.[9] At most, MMI claims that "[c]ombining this newly invented asymmetrical frame with the standard, off-balance structure of a minibike *resulted in a far more balanced and aesthetically pleasing product overall*." (Doc. 88 at 7 (emphasis added).) Even when viewing this fact in the light most favorable to MMI, it remains unavailing; the Court looks to whether the alleged anticipatory product is substantially similar to the claimed design, not to the subsequent commercial embodiment of it. *See Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993). Thus, to the extent there is a difference of asymmetry of the frame in the two designs, it is the kind of "minor or trivial difference[] that necessarily exist[s] between any two designs that are not exact copies of one another." *Int'l Seaway*, 589 F.3d at 1243.

Because the 2006 DB-30 minibike embodies the overall effect of the design claimed in the '203 Patent, an ordinary observer would be deceived into believing the

---

[9] The substantial similarity of the two designs is consistent the fact MMI refers to the differences as improvements or modifications, and the fabrication of the asymmetrical minibike design as a second production run of the 2006 DB-30 minibike. (*See e.g.,* Docs. 84 ¶¶ 48, 51; 85 ¶¶ 6-7 (referring to alleged design differences as improvements); Doc. 84 ¶¶ 61-2 (referring to alleged design differences as modifications); Doc. 84 ¶¶ 63-64 (discussing original and second production runs); Doc. 87 at 83 ("The Doodle Bug is back and better than ever.").)

2006 DB-30 minibike is the claimed design. Accordingly, the Court concludes that Defendants have shown by clear and convincing evidence that the design in the '203 Patent is anticipated by the 2006 DB-30 minibike.

### B. Commercial Offer for Sale

Second, Defendants have presented clear and convincing evidence that the claimed invention was the subject of a commercial offer for sale before the critical date.

There is no dispute that the critical date is November 15, 2006, one year before the '203 Patent was filed. Nor does MMI dispute that there was a commercial offer for sale of the 2006 DB-30 minibikes prior to that critical date. (*See* Doc. 88 at 5.) The 2006 DB-30 minibikes were ordered in quantities, manufactured, sold, and delivered to retailor distributors in the United States who offered them for sale to customers in the United States prior to November 15, 2006. *See Merck & Cie v. Watson Laboratories, Inc.,* 822 F.3d 1347, 1352 (Fed. Cir. 2016) ("An offer to sell is sufficient to raise the on-sale bar to patent validity, regardless of whether that sale is ever consummated"); *Atlanta Attachment*, 516 F.3d at 1366 ("An offer to mass produce production models does not square with experimentation under any standard; it is commercial exploitation."); *Buildex Inc. v. Kason Indus.,* 849 F.2d 1461, 1464 (Fed. Cir. 1988) ("Even if no delivery is made prior to the critical date, the existence of a sales contract or the signing of a purchase agreement prior to that date has been held to demonstrate an "on sale" status for the invention.").

Because MMI has not raised a genuine issue of material fact as to whether the minibikes were subject to a commercial offer of sale, and because Defendants have provided clear and convincing evidence of such sales, the factor of the on-sale bar is satisfied.

### C. Ready for Patenting

Third, Defendants have presented clear and convincing evidence that the claimed invention was ready for patenting at the time of the commercial offer for sale.

The condition that the invention must be ready for patenting "may be satisfied in

at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff,* 525 U.S. at 67-68. Here, the 2006 DB-30 minibike embodying the claimed invention was manufactured in quantities and distributed for sale. It follows that the claimed invention was "reduced to practice" and ready for patenting prior to the critical date. *See Continental*, 141 F.3d at 1079 ("design inventions are reduced to practice as soon as an embodiment is constructed"); *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 726 F.3d 1370, 1379 (Fed. Cir. 2013).

MMI counters that the claimed design was not ready for patenting because it did not include the asymmetrical design. This argument fails. As previously addressed, the 2006 DB-30 minibike embodied the claimed invention. There is nothing in the '203 Patent that sets specific parameters for size or degree of asymmetry in the frame, and "[a]n invention can be considered reduced to practice 'even though it may later be refined or improved.'" *Atlanta Attachment*, 516 F.3d at 1367 (quoting *New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002)); *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000) ("any 'fine tuning' the Excalibur heads may have required after the Bart's sale does not undermine the conclusion that the invention was ready for patenting."). Defendants have therefore also met their burden to show by clear and convincing evidence that the claimed invention was ready for patenting in order to invoke the on-sale bar.

**IV. Conclusion**

Defendants have overcome the presumption of validity by presenting clear and convincing evidence that the patented minibike design was on-sale before the critical date and the evidence of invalidity is such that "no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). [10] Therefore, finding

---

[10] Having reached this conclusion, the Court does not reach the alternative arguments regarding invalidity on the basis of obviousness or indefiniteness.

Defendants have satisfied their burden of proof under § 102(b), the Court will grant summary judgment as to Defendants' counterclaim on invalidity, and will declare the '203 Patent to be invalid. Plaintiff's patent infringement claims, and Defendants' counterclaim for a declaration of non-infringement will therefore be dismissed as moot. *See Commil USA, LLC v. Cisco Systems, Inc.*, 135 S.Ct. 1920, 1923 (2015) ("To be sure, if a patent is shown to be invalid, there is no patent to be infringed.").

Lastly, the Court observes that neither party has moved for summary judgment on the remaining state law claims in the First Amended Complaint. Having reviewed those claims, the Court finds that it lacks diversity jurisdiction (*see* Doc. 52 ¶¶ 1-6), and otherwise declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994). Therefore, the state law claims will also be dismissed. Accordingly,

**IT IS ORDERED:**

1. That Defendants' Partial Motion for Summary Judgment (Doc. 79) on Count I of the Counterclaims seeking a declaration of invalidity is **granted**;

2. That United Patent Design Patent No. D591,203S is hereby **declared to be invalid** under 35 U.S.C. § 102;

3. That Count II of the Counterclaims seeking a declaration of non-infringement are **dismissed**;

4. That the First Amended Complaint (Doc. 52) is **dismissed in its entirety**; and

5. That the Clerk of Court shall **terminate** this case and enter judgment accordingly.

Dated this 29th day of September, 2017.

Honorable Steven P. Logan
United States District Judge